**Darcy MOORE, Plaintiff,**

v.

**John POTTER, Postmaster General United States Postal Service, Defendant.**

**Nos. 00CV3846, 00CV3847, 00CV7671(ADS)(ARL).**

United States District Court, E.D. New York.

Aug. 28, 2002.

Darcy Moore, Road Elmont, NY, pro se.

Alan Vinegrad, United States Attorney, by Assistant United States Attorney Mary Elizabeth Delli–Pizzi, Central Islip, NY, for defendant.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The *pro se* plaintiff Darcy Moore ("Moore" or the "plaintiff"), a former supervisor with the United States Postal Service, has filed four complaints in this Court alleging that the defendant the Postmaster General of the United States Postal Service (the "Postal Service" or the "defendant") discriminated against him on the basis of his race, color and national origin in violation of Title VII of the Civil Rights Act of 1964. Presently before the Court is a motion for summary judgment to dismiss three of the complaints for failure to timely exhaust administrative remedies.

## I. BACKGROUND

### A. The First Action—00CV3846

The following facts are not disputed. The plaintiff, an African–American, was employed as a supervisor with the United States Postal Service at a facility located in Garden City, New York. In April 1996, the Postal Service denied the plaintiff's application to transfer to the Processing and Distribution Center in Norfolk, Virginia. On April 2, 1996, the plaintiff filed an appeal with the Merit Systems Protection Board ("MSPB") challenging the Postal Service's denial of his request for a transfer.

On June 12, 1996, the plaintiff requested counseling with the Equal Employment Office of the United States Postal Service (the "EEO") alleging that the Postal Service denied his transfer request because of his race. On July 16, 1996, after the completion of the EEO counseling, the plaintiff filed a formal written administrative complaint (the "EEO complaint"). On September 5, 1996, the EEO Office dismissed the EEO Complaint on the ground that the plaintiff failed to timely contact an EEO counselor. On September 12, 1997, the plaintiff appealed the EEO decision to the Equal Employment Opportunity Commission (the "EEOC"). On June 25, 1998, the EEOC affirmed the EEO decision. On September 9, 1998, the plaintiff filed a

request for reconsideration with the EEOC which was denied on April 17, 2000.

On June 29, 2000, the plaintiff filed a complaint in the Eastern District of New York against the Postmaster General alleging that, in April 1996, the Postal Service discriminated against him on the basis of his race when it denied him a transfer to the Processing and Distribution Center in Norfolk, Virginia. The Postal Service now moves to dismiss the complaint arguing that the plaintiff failed to timely exhaust his administrative remedies because he did not timely seek EEO counseling.

## B. The Second Action—00CV3847

On March 16, 1997, Postal Service Supervisor James Istchenko verbally reprimanded the plaintiff for sleeping on duty. On March 17, 1997, the plaintiff approached Istchenko to discuss the reprimand of the previous day. At that time, the plaintiff alleges that Istchenko threatened him. As a result of this alleged threat, the Postal Service placed the plaintiff on administrative leave and conducted an investigation. On April 8, 1997, the Postal Service issued to the plaintiff a Letter of Warning for sleeping on duty.

The plaintiff alleges that on April 19, 1997, Postal Service Supervisor Michael Gebert, a Caucasian, challenged him to a fight for no reason. Thereafter, the plaintiff reported Gebert's actions to the Postal Service. However, the Postal Service did not place Gebert on administrative leave when it investigated the plaintiff's allegations. On April 28, 1997, the plaintiff requested counseling with the EEO alleging that the Postal Service discriminated against him when it placed him but not Gebert on administrative leave. On July 22, 1997, after completion of his counseling, the plaintiff filed an EEO Complaint. On August 8, 1997, the EEO dismissed the EEO Complaint on the ground that the

plaintiff suffered no harm when he was placed on administrative leave and Gebert was not.

Thereafter, the plaintiff appealed the EEO decision to the EEOC. On December 23, 1998, the EEOC reversed the EEO decision on the ground that it improperly dismissed the complaint and remanded the matter to the EEO for further consideration. On September 1, 1999, the EEO again dismissed the EEO Complaint finding that the plaintiff failed to prove discrimination. The plaintiff then appealed the EEO decision to the EEOC. On March 17, 2000, the EEOC affirmed the EEO decision. In its decision, the EEOC advised the plaintiff that he had 90 days from the date that he received the decision to file a civil action in federal court. The decision also certified that the EEOC mailed a copy of the decision on the date of the affirmance.

On June 29, 2000, the plaintiff filed a complaint in the Eastern District of New York against the Postmaster General alleging that the Postal Service discriminated against him on the basis of his race, color and national origin when it placed him on administrative leave but not a Caucasian supervisor who allegedly threatened him. The Postal Service now moves to dismiss the complaint arguing that the plaintiff failed to timely exhaust his administrative remedies because he did not file a complaint in federal court within 90 days of receiving the EEOC decision.

## C. The Third Action—00CV7671

On May 23, 1994, the Postal Service issued to the plaintiff a Letter of Warning for his poor work attendance. On May 31, 1994, the plaintiff requested counseling with the EEO alleging that the Postal Service issued the Letter of Warning because of his race, color and national origin. On August 16, 1994, after completion of his

counseling, the plaintiff filed an EEO Complaint. On September 29, 1994, the EEO notified the plaintiff that it was holding his complaint in abeyance pending the MSPB ruling on jurisdiction because the plaintiff had first filed an appeal with the MSPB in connection with the above Letter of Warning.

Shortly thereafter, the MSPB concluded that it lacked jurisdiction over the plaintiff's appeal. On December 16, 1994, the EEO notified the plaintiff that it accepted his EEO Complaint for investigation on the issue of whether the Postal Service discriminated against him because of his race, color and national origin in connection with the May 23, 1994 Letter of Warning. By letter dated April 19, 1995, the EEO advised the plaintiff that it completed its investigation of the EEO Complaint. Enclosed with the letter was a copy of the investigation file and instructions how to obtain further review of the EEO Complaint. The letter noted that the plaintiff had 30 days upon receipt of the investigation file to make a written request for either a hearing before an administrative judge of the EEOC or a final decision by the EEO without a hearing. On May 5, 1995, the plaintiff received a copy of the letter containing the investigation file.

By letter dated June 5, 1995, the plaintiff requested a hearing before an administrative judge of the EEOC. On June 6, 1995, the EEO received the request. On August 10, 1995, the EEO denied the plaintiff's request for a hearing because it was untimely. Also, the EEO issued its final agency decision finding that the plaintiff failed to establish a *prima facie* case of discrimination. On September 23, 1995, the plaintiff appealed the EEO decision to the EEOC. On November 6, 1997, the EEOC vacated the EEO decision and remanded for a hearing. On November 12, 1997, the EEO requested reconsideration of the EEOC decision. On March 26, 1998, the EEOC denied the EEO request for reconsideration. On April 1, 1998, the EEO sent the administrative file to the Chief Administrative Judge of the EEOC for a hearing.

On October 23, 1998, on behalf of the Postal Service, Istchenko personally delivered to the plaintiff a Letter of Warning in lieu of a 14 day suspension after the plaintiff was found, among other things, riding a bicycle on the work floor. On December 24, 1998, the plaintiff requested counseling with the EEO claiming that the Postal Service discriminated against him on the basis of his race, color and national origin when it issued the October 23, 1998 Letter of Warning. On March 22, 1999, after completion of his counseling, the plaintiff filed an EEO Complaint. On October 26, 1999, the EEO completed its investigation and sent its file to the plaintiff with instructions on how to obtain further review of the EEO Complaint. The investigation file noted that the plaintiff had 30 days upon receipt of the file to make a written request for either a hearing before an administrative judge of the EEOC or a final decision by the EEO without a hearing. On February 16, 2000, the EEO certified that it sent the plaintiff the investigative file. On March 6, 2000, the plaintiff requested a hearing before an administrative judge of the EEOC.

On September 29, 2000, the administrative judge of the EEOC issued a decision concerning the May 23, 1994 and the October 23, 1998 Letters of Warning. In his decision, the administrative judge dismissed both cases finding that the Postal Service did not discriminate against the plaintiff in either incident. On October 13, 2000, the EEO issued its notice of final action implementing the decision of the administrative judge. On that date, the EEO mailed the notice to the plaintiff.

On December 29, 2000, the plaintiff filed a complaint in the Eastern District of New York against the Postmaster General alleging that the Postal Service discriminated against him on the basis of his race when it issued to him the May 23, 1994 and the October 23, 1998 Letters of Warning. The Postal Service now moves to dismiss the complaint on two separate grounds. First, the claim involving the May 23, 1994 Letter of Warning must be dismissed because the plaintiff's June 6, 1995 request for a hearing was untimely. Second, the claim involving the October 23, 1998 Letter of Warning must be dismissed because the plaintiff's December 24, 1998 request for EEO counseling was untimely. As part of its motion, the Postal Service served the plaintiff with a notice advising him that his claims may be dismissed if he does not respond to the motion and advised him that he must submit evidence countering the facts asserted by the Postal Service and raise issues of fact for trial.

## II. DISCUSSION

In addressing the present motion, the Court is mindful that the plaintiff is proceeding *pro se* and that his submissions should be held " 'to less stringent standards than formal pleadings drafted by lawyers....' " *Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 176, 66 L.Ed.2d 163 (1980) (per curiam) (quoting *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d 652 (1972)); *see also Ferran v. Town of Nassau,* 11 F.3d 21, 22 (2d Cir. 1993). The Court recognizes that it must make reasonable allowances so that the *pro se* plaintiff does not forfeit rights by virtue of his lack of legal training. *See Traguth v. Zuck,* 710 F.2d 90, 94 (2d Cir. 1983). Indeed, the Court is aware that it should "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.' " *McPherson v. Coombe,* 174

F.3d 276, 280 (2d Cir.1999) (quoting *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994)). Nevertheless, the Court is also aware that *pro se* status " 'does not exempt a party from compliance with relevant rules of procedural and substantive law....' " *Traguth,* 710 F.2d at 95 (citation omitted).

### A. The Standard of Review

Summary judgment must "be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the party moving for summary judgment to establish the absence of any genuine issues of material fact, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986), and any ambiguities must be resolved in favor of the non-movant, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 330 n. 2, 106 S.Ct. 2548, 2556 n. 2, 91 L.Ed.2d 265 (1986).

"When the movant demonstrates through competent evidence that no material facts are genuinely in dispute, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.' " *Western World Ins. Co. v. Stack Oil, Inc.,* 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)). "The non-movant cannot escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts, or defeat the motion through mere speculation or conjecture." *Id.* (internal quotation marks and citations omitted). Lastly, the existence of disputed facts that are not material to the issues at hand may not defeat summary judgment. *Id.*

"As to materiality, the substantive law will identify which facts are material." *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Id.* If there is evidence in the record, including affidavits, exhibits, interrogatory answers, and depositions, as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Lane v. New York State Electric & Gas Corp.,* 18 F.3d 172, 176 (2d Cir. 1994); *Rattner v. Netburn,* 930 F.2d 204, 209 (2d Cir.1991).

"[T]he trial court's task at the summary judgment motion stage of litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to decid[e] them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs. Ltd.,* 22 F.3d 1219, 1224 (2d Cir. 1994).

## B. The Exhaustion of Administrative Remedies

### 1. Sovereign Immunity

It is well-settled that the United States government is immune from suit in federal court under the principle of sovereign immunity. *United States v. Mitchell,* 463 U.S. 206, 212, 103 S.Ct. 2961, 2965, 77 L.Ed.2d 580 (1983). Such immunity extends to the agencies and officers of the United States. *Robinson v. Overseas Military Sales Corp.,* 21 F.3d 502, 510 (2d Cir.1994). The United States Postal Service is a federal agency, and its Postmaster General is a federal officer.

If Congress wants to waive the federal government's sovereign immunity, it must do so with clear and unequivocal statutory language. *See United States v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 1368, 108 L.Ed.2d 548 (1990). "If the government has not waived its sovereign immunity, or if the conditions under which the government has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist" and a district court must dismiss the case. *See Dillard v. Runyon,* 928 F.Supp. 1316, 1322 (1996) (citing *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)).

In 1972, Congress amended Title VII of the Civil Rights Act of 1964 and waived the federal government's sovereign immunity for suits alleging discrimination in a government workplace on the basis of race, sex, color, religion or national origin. 42 U.S.C. S 2000e–16(a) (1994). However, Congress limited this waiver of immunity on the condition that government employees first exhaust their administrative remedies as defined by the statute and regulations promulgated thereunder. 42 U.S.C. S 2000e–16(c) (1994); *Brown v. General Servs. Admin.,* 425 U.S. 820, 835, 96 S.Ct. 1961, 1969, 48 L.Ed.2d 402 (1976). A federal employee's failure to exhaust administrative remedies or failure to abide by the prescribed time provisions does not trigger the waiver of sovereign immunity and a district court is deprived of subject matter jurisdiction to decide that employee's case. *Brown,* 425 U.S. at 835–36, 96 S.Ct. at 1969. The Court now turns to the question of whether the plaintiff has exhausted his administrative remedies in a timely fashion.

### 2. The Administrative Remedies

Equal employment opportunity in the federal sector is governed by 29 C.F.R.

§ 1614. *Economou v. Caldera,* 286 F.3d 144, 149 (2d Cir.2002). Section 1614.302 provides in pertinent part that "[a]n aggrieved person may initially file a mixed case complaint with an agency [the EEO] pursuant to this part or an appeal on the same matter with the MSPB ..., *but not both.*" 29 C.F.R. § 1614.302(b) (1996–2000) (emphasis added). Section 1614.107(d) explains the exclusive nature of an initial filing with the MSPB or EEO by noting among the reasons which the EEO may dismiss a complaint if, "the complainant has raised the matter ... in an appeal to the [MSPB] and § 1614.301 or § 1614.302 indicates that the complainant has elected to pursue the non-EEO process." 29 C.F.R. § 1614.107(d) (1996–1999) & 29 C.F.R. § 1614.107(a)(4).

The reason for allowing only one avenue to be pursued is that an aggrieved person is not allowed to "browse at will through multiple administrative reviews in search of a more favorable outcome." *Economou,* 286 F.3d at 150. *See also Bornholdt v. Brady,* 869 F.2d 57, 62 (2d Cir.1989) (stating that an aggrieved party is not entitled to pursue her or his "mixed case" claim in more than one administrative forum simultaneously); *German v. Pena,* 88 F.Supp.2d 222, 225 (S.D.N.Y.2000) (same); *Khalfani v. Dep't of Veterans Affairs,* No. 93–5374, 94–0644, 94–5720, 1998 WL 817654, at *5 (E.D.N.Y. Mar.2, 1998) (same). In the regulations that control in this case, a "mixed case complaint" is defined as "a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB)." 29 C.F.R. § 1614.302(a)(1) (1996–2000).

The binding "election" between the MSPB and EEO remedies takes place as soon as a formal petition is filed in either forum. 29 C.F.R. § 1614.302(b) ("[W]hichever [the MSPB appeal or the EEO complaint] is filed first shall be considered an election to proceed in that forum"). "An election to proceed [with an EEO action] is indicated only by the filing of a written complaint; use of the pre-complaint process ... does not constitute an election for purposes of this section." 29 C.F.R. § 1614.301(a). As such, the claimant's filing of the first formal petition determines the appropriate forum for agency review. Whichever forum that the claimant first chooses, she must raise in that forum all of her claims as to the agency's wrongful acts, including her claim for discrimination. *See German,* 88 F.Supp.2d at 225 (stating that the "[p]laintiff's allegations of discrimination could properly be brought only before the MSPB, the agency in which he initially chose to pursue all claims that his supervisors improperly evaluated him.").

If a claimant chooses to file a complaint with the EEO, she must, among other things: (1) consult with a counselor at the relevant agency's EEO within 45 days of the alleged discriminatory act, *see* 29 C.F.R. § 1614.105(a)(1); and (2) if the matter is not resolved after a mandatory counseling period, file a formal written administrative complaint, namely an EEO complaint, within 15 days of receipt of the EEO counselor's notice of final interview and right to file a formal complaint ("EEO notice"), *see id.* § 1614.106(a), (b). Thereafter, the claimant may then file a civil action (a) within 90 days of the notice of a final agency decision on her EEO complaint, or (b) after 180 days from the filing of the EEO complaint if the agency has not yet rendered a decision. *See* 42 U.S.C. § 2000e–16 (c); 29 C.F.R. § 1614.408(a), (b) (1996–1999) & 29 C.F.R. § 1614.407(a), (b) (2000).

If a claimant chooses the MSPB route, she must file an appeal with the MSPB

within 30 days of the effective date of the adverse employment action. 5 C.F.R. § 1201.22(b) (1996–2000). A district court has subject matter jurisdiction only to review a final decision by the MSPB that involves a "mixed case" appeal. 5 U.S.C. § 7703(b)(1). "A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age." 29 C.F.R. § 1614.302(a)(2)(1999). Indeed, "in order for an MSPB decision concerning a mixed appeal to be considered 'judicially reviewable' by the district courts, the MSPB decision must reach the merits of both the appealable action and the discrimination claim." *Downey v. Runyon*, 160 F.3d 139, 144 (2d Cir.1998) (citations omitted). Finally, a petition for judicial review of an adverse MSPB final decision in a "mixed case" must be filed within 30 days of receiving notice of the Board's decision unless the individual asks the EEOC to review the discrimination issue. 5 U.S.C. §§ 7703(b)(2), 7702(a)(3).

Within this framework, the Court addresses each complaint to determine whether the plaintiff has timely exhausted his administrative remedies.

### a. The First Action—00CV3846

■ On June 29, 2000, the plaintiff filed a complaint in the Eastern District of New York against the Postmaster General alleging that, in April 1996, the Postal Service discriminated against him on the basis of his race when it denied him a transfer to the Processing and Distribution Center in Norfolk, Virginia. The defendant argues that the plaintiff has failed to exhaust his administrative remedies because he did not timely seek counseling with the EEO. Based upon the present record, the Court is unable to determine whether the plain-

tiff timely exhausted his administrative remedies in the first action.

First, as to the denial of his request for a transfer, the plaintiff filed a "mixed case complaint" with a federal agency, namely the EEO Office of the United States Postal Service. This complaint was a "mixed case" because the plaintiff alleged that the Postal Service denied his application for a transfer on the basis of among other things his race in violation of federal discrimination laws. As such, the plaintiff had the option of choosing either the EEO process or the MSPB forum to pursue his administrative remedies, but not both. *See* 29 C.F.R. § 1614.302(b) (1996) ("An aggrieved person may initially file a mixed case complaint with an agency [the EEO] pursuant to this part or an appeal on the same matter with the MSPB ..., *but not both.*") (emphasis added).

The plaintiff filed his first formal petition as to the transfer denial with the MSPB on April 2, 1996 which was on or about the date that he was denied the transfer. This petition was timely. *See* 5 C.F.R. § 1201.22(b) (1996) (stating that a claimant must file an appeal with the MSPB within 30 days of the effective date of the adverse employment action). The proceedings before the EEO are not relevant to the issue of whether the plaintiff exhausted his administrative remedies because he choose the MSPB forum first. *See Economou*, 286 F.3d at 149. Also, by selecting the MSPB route, the plaintiff was bound to exhaust all of his claims in that forum. *Id.* at 150.

However, the Court has insufficient facts to determine whether the plaintiff timely exhausted his administrative remedies in the MSPB. In particular, the record before this Court does not contain: (1) the plaintiff's petition that was filed with the MSPB; (2) the MSPB's initial decision; and (3) records of any further proceedings

before the MSPB or reasons why there are none. As such, the defendant fails to meet its burden of proving that in the first action there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Accordingly, the motion for summary judgment as to the first action is denied.

### b. The Second Action—00CV3847

█ On June 29, 2000, the plaintiff filed a complaint in the Eastern District of New York against the Postmaster General alleging that the Postal Service discriminated against him on the basis of his race, color and national origin when in March 1997 it placed him, but not a Caucasion supervisor who allegedly threatened him, on administrative leave. The defendant argues that the plaintiff has failed to timely exhaust his administrative remedies because, in connection with this purported discriminatory act, he did not file a complaint in federal court within 90 days after receiving the EEOC decision. The Court agrees.

It is well-settled that a claimant must file a complaint in federal court within 90 days of receiving the final agency decision on her EEO complaint. 29 C.F.R. § 1614.407(a), (b) (2000). On March 17, 2000, the EEOC affirmed the EEO decision finding that the plaintiff failed to prove discrimination when the Postal Service placed him on administrative leave. In its decision, the EEOC advised the plaintiff that he had 90 days to file a complaint in federal court.

In addition, the EEOC certified that it mailed a copy of the decision to the plaintiff on March 17, 2000. With no evidence to the contrary, the Court assumes that the plaintiff received the decision by Monday, March 20, 2000. *See Sherlock v. Montefiore Med. Ctr.,* 84 F.3d 522, 525 (2d Cir.1996) ("Normally it is assumed that a mailed document is received three days after its mailing."). Here, the plaintiff filed an action arising out of the decision to place him on administrative leave in this Court on June 29, 2000, 101 days after receiving the final decision. Because the plaintiff did not file his complaint within 90 days of receiving notice of the final decision, the complaint in the second action is time barred. *See Long v. Frank,* 22 F.3d 54, 58 (2d Cir.1994) (stating that failure to comply with the time limitations warrants dismissal of the complaint). Accordingly, the motion for summary judgment as to the second action is granted.

### c. The Third Action—00cv7671

On December 29, 2000, the plaintiff filed a complaint in the Eastern District of New York against the Postmaster General alleging that the Postal Service discriminated against him on the basis of his race when it issued to him the May 23, 1994 and the October 23, 1998 Letters of Warning. As to the claim involving the May 23, 1994 Letter of Warning, the defendant argues that the plaintiff has failed to timely exhaust his administrative remedies because his June 6, 1995 request for a hearing before an administrative judge was untimely by 2 days. As to the claim involving the October 23, 1998 Letter of Warning, the defendant argues that the plaintiff failed to timely exhaust his administrative remedies because his December 24, 1998 request for EEO counseling was untimely by more than 15 days. The Court addresses each argument separately.

#### i. The May 23, 1994 Letter of Warning

█ 29 C.F.R. § 1614.108(f) provides in pertinent part that:

Within 180 days from the filing of the complaint, ... the agency shall notify the complainant that the investigation

has been completed, shall provide the complainant with a copy of the investigative file, and shall notify the complainant that, within 30 days of receipt of the investigative file, the complainant has the right to request a hearing before an administrative judge or may receive an immediate final decision pursuant to § 1614.110 from the agency with which the complaint was filed.

29 C.F.R. § 1614.108(f) (1994). On May 5, 1995, the plaintiff received a copy of the investigative file. The letter accompanying the investigative file advised the plaintiff that he had 30 days to request either a hearing before an administrative judge or final decision by the EEO. On June 5, 1995, the plaintiff requested a hearing before an administrative judge. This request was made within 30 days as June 4, 1995 was not counted because it was a Sunday. *See* 5 C.F.R. § 1201.23 (1995) ("In computing the number of days allowed for filing a submission, the first day counted is the day after the event from which the time period begins to run. If the date that ordinarily would be the last day for filing falls on a Saturday, Sunday or Federal holiday, the filing period will include the first workday after that date."). Accordingly, the motion for summary judgment dismissing the claim involving the May 23, 1994 Letter of Warning is denied.

### ii. The October 23, 1998 Letter of Warning

29 C.F.R. § 1614.105 provides in pertinent part that: "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory...." 29 C.F.R. § 1614.105(a)(1) (1998). Istchenko, on behalf of the defendant, personally delivered the October 23, 1998 Letter of Warning to the plaintiff. As such, the plaintiff had until December 7, 1998 to seek counseling with the EEO. The plaintiff did not seek counseling with the EEO until December 24, 1998, 62 days after he received the letter. Thus, the plaintiff failed to timely seek counseling with the EEO and his claim is time-barred. *See Long,* 22 F.3d at 58 (stating that failure to comply with the time limitations warrants dismissal of the complaint). Accordingly, the motion for summary judgment dismissing the claim involving the October 23, 1998 Letter of Warning for failure to exhaust administrative remedies is granted.

### C. Equitable Tolling

The doctrine of equitable tolling may be invoked when: (1) the claimant actively pursued her judicial remedies in the prescribed time period; (2) she was induced or tricked by her adversary's misconduct into allowing the deadline to pass; (3) the court leads a plaintiff to believe that she has done all that is required; (4) the plaintiff has received inadequate notice; or (5) when a motion for the appointment of counsel is pending. *South v. Saab Cars USA, Inc.,* 28 F.3d 9, 11–12 (2d Cir.1994). Equitable tolling is not available when it is the fault of the claimant for failing to exercise due diligence in meeting the filing deadlines. *Id.* at 12.

Federal law controls as to whether a Title VII plaintiff may benefit from equitable tolling and courts have permitted such tolling "only sparingly." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *Dillard v. Runyon,* 928 F.Supp. 1316, 1325 (S.D.N.Y. 1996) (stating that "[e]quitable tolling is not available when the claimant herself fails to exercise due diligence"); *Bumpus v. Postmaster General,* No. 86–1166, 1987 WL 34255, at *5 (S.D.N.Y. Dec. 30, 1987) (stating that equitable relief from an untimely filing should be rarely granted on claims against federal government).

The plaintiff does not argue that the doctrine of equitable tolling should apply in this case and the Court finds no reason to apply it to the claims that are time-barred for the following reasons: The plaintiff did not actively pursue his judicial remedies during the prescribed time limits; there is no evidence that the government tricked him into missing the deadlines; no court has lead the plaintiff to believe that he has done all that is required; the plaintiff received notice of his right to seek judicial review upon each dismissal of his various complaints during the administrative process. Based upon the number of administrative complaints filed, the plaintiff was no stranger to the administrative process. As such, the Court finds that the only reason for the plaintiff's failing to exhaust his administrative remedies was his own lack of due diligence. Thus, the doctrine of equitable tolling does not apply to the claims that are time-barred.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED**, that the motion for summary judgment dismissing the complaint in the first action, 00CV3846 on the ground that the plaintiff failed to exhaust his administrative remedies in a timely fashion is **DENIED**; and it is further

**ORDERED**, that the motion for summary judgment dismissing the complaint in the second action, 00CV3847 on the ground that the plaintiff failed to exhaust his administrative remedies in a timely fashion is **GRANTED**; and it is further

**ORDERED**, that the Complaint in 00CV3847 is dismissed and the Clerk of the Court is directed to close that case; and it is further

**ORDERED**, that the motion for summary judgment dismissing the complaint in the third action, 007671 on the ground that the plaintiff failed to exhaust his administrative remedies in a timely fashion is **DENIED** as to the claim arising out of the May 23, 1994 Letter of Warning but **GRANTED** as to the claim arising out of the October 23, 1998 Letter of Warning; and it is further

**ORDERED**, the parties are directed to appear forthwith before United States Magistrate Judge Arlene R. Lindsay for the completion of discovery.

**SO ORDERED.**