NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1278n.06

Case Nos. 11-1746

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
**Dec 11, 2012**
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| KENDRA S. VANDERLEE, | ) |
| | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| PATRICK R. DONAHOE, POSTMASTER | ) |
| GENERAL of the UNITED STATES, | ) |
| | ) |
| Respondent-Appellee. | ) |
| | ) |

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF MICHIGAN

Before:  BATCHELDER, Chief Circuit Judge; COLE, Circuit Judge; and ROSEN, District Judge.[*]

**ALICE M. BATCHELDER, Chief Judge.**  Kendra Vanderlee appeals the district court's grant of summary judgment to the defendant United States Postal Service (USPS).  For the reasons stated by the district court, and reiterated herein, we AFFIRM.

**I.**

Vanderlee began employment with the USPS in August 1992 as a Rural Carrier Associate (RCA), a part-time position in which she substituted for full-time rural mail carriers.  Rural mail carriers are unionized under the National Rural Letter Carriers' Association, which has a collective bargaining agreement with the USPS.  Under this agreement, a person must begin work as an RCA

_____

[*]The Honorable Gerald E. Rosen, Chief United States District Judge for the Eastern District of Michigan, sitting by designation.

before she is permitted to bid on a full-time rural carrier position. Vanderlee worked as an RCA until January 1997, when she bid for and received a position as a full-time rural carrier.

In January 1998, Vanderlee was seriously injured in an automobile accident while delivering the mail. She obtained worker's compensation benefits and was placed in a limited duty position that guaranteed no lifting, pulling, or carrying more than ten pounds, and only intermittent standing or twisting. She attempted to return to her carrier position but re-aggravated the injury in January 1999. She returned to the limited duty assignment.

On November 2, 1999, Vanderlee submitted a "work restriction evaluation" form, known as an OWCP-5, wherein her treating physician asserted that she had reached maximum improvement and was "permanently disabled from performing her normal route functions." Because she was permanently disabled from working as a rural carrier, the USPS offered her a Rehabilitation Job Offer Assignment, or "Rehab Job," as a General Clerk with restrictions on her standing, walking, carrying/pulling/lifting weight, bending, reaching, or twisting, or sitting for prolonged periods.

Vanderlee accepted the Rehab Job on September 13, 2000. The USPS documented this re-assignment in a Standard Form 50 ("Notice of Personnel Action") and adjusted her salary to ensure that she did not suffer any decrease in compensation as a result of the re-assignment. Because General Clerks are members of the Clerk Craft Union (which has a separate CBA with the USPS), Vanderlee became a member of that union upon acceptance of the assignment and left the NRLCA. But the Rehab Job was a position created especially for Vanderlee — to accommodate her disability — it was not a permanent position available to other union members based on seniority.

2

On March 26, 2004, Vanderlee provided a letter from her treating physician stating that she was no longer subject to physical restrictions and "may return to her [former] job as a rural carrier at any time." In response to this letter, the USPS ended Vanderlee's Rehab Job assignment and awarded her a full-time General Clerk position. But Vanderlee wanted to be a rural carrier again. On April 12, 2004, she sent a letter to the USPS, insisting that she had "fully recovered from [her] injuries and ha[d] been cleared to return to [work] . . . with no restrictions," and asked to "be put on a priority reemployment list in the rural craft for the next full time [rural mail carrier] position." Because Vanderlee was no longer an NLRCA member, the local union replied that "there is no provision between the parties . . . for your return to the rural [mail carrier] craft in any way other than taking the test to become an RCA and to be hired thr[ough] that process."

Meanwhile, the Clerk Craft's union steward — apparently under the erroneous assumption that Vanderlee was not a member of the Clerk Craft union — protested the award of a union position to her. The USPS responded that Vanderlee had joined the Clerk Craft when she accepted the Rehab Job; she became an unassigned regular member within the Clerk Craft when she recovered from her injuries and the special Rehab Job ended; and she was awarded a job on which no one else had bid.

According to Vanderlee, other Clerk Craft members — also apparently under the assumption that she was not a member of the Clerk Craft union — harassed her because they thought she was not entitled to the General Clerk job. On July 26, 2004, Vanderlee submitted a note from a psychologist, Dr. Nelson Zwaanstra, stating that she was suffering severe stress caused by her work environment and that she was no longer able to work. Two days later, Vanderlee presented another letter, from one Dr. Bleicher, asserting that, in Vanderlee's words, "due to stresses, which have been

3

going on since August 2002, [she] was having chest pains and shortness of breath, difficulty concentrating, and difficulty controlling her blood sugars." On August 11, 2004, Dr. Zwaanstra stated that Vanderlee was experiencing increased panic and anxiety, and was too anxious to function on the job; he diagnosed her with adjustment disorder with mixed anxiety and depression.

Vanderlee stopped going to work. On February 23, 2005, the USPS mailed her a letter proposing to terminate her employment. On November 4, 2005, the USPS sent her another such letter, to which she responded that she was suffering medical problems due to harassment and a hostile work environment. On December 9, 2005, the USPS terminated her employment.

In February 2005, Vanderlee had filed a complaint with the EEOC accusing the USPS of failing or refusing to return her to a full-time rural carrier position. In November 2009, the EEOC issued her a right-to-sue letter. In February 2010, Vanderlee sued the USPS, seeking reinstatement to the position of rural carrier, back pay, and other damages in the amount of $300,000. The USPS moved for summary judgment on the primary basis that — according to the letter she had submitted from her own doctor — she was no longer disabled at the time of the alleged adverse employment action (that action being the alleged refusal to return her to a rural carrier position). The district court granted summary judgment (on this and other bases) and Vanderlee appeals.

## II.

We review *de novo* a district court's grant of summary judgment. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000). Under Federal Rule of Civil Procedure 56(a), summary judgment is proper if the record "shows that there is no genuine dispute as to any material fact and the movant

4

is entitled to judgment as a matter of law." We review the facts and evidence in the light most favorable to the nonmoving party. *Warf v. Bd. of Elections*, 619 F.3d 553, 558 (6th Cir. 2010).

The Rehabilitation Act provides in pertinent part that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive Agency." 29 U.S.C. § 794(a). To prevail on her Rehabilitation Act claim for disability-based discrimination, Vanderlee must establish by a preponderance of the evidence that: (1) she had a disability, (2) she was otherwise qualified to perform the requirements of the position, with or without reasonable accommodations, and (3) she suffered an adverse employment action solely by reason of her disability. *See Lee v. City of Columbus*, 636 F.3d 245, 249 (6th Cir. 2011). On the first element, she must show that she was disabled at the time of the adverse employment action for which she seeks Rehabilitation Act recovery. *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 884 (6th Cir. 1996).

The adverse action for which Vanderlee's complaint sought recovery was the USPS's denial of her April 2004 request to be returned to a full-time rural carrier position. To make out a *prima facie* case, Vanderlee had to present evidence that, at the time of that adverse action, she (1) had a physical or mental impairment which substantially limited her in at least one major life activity, such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working"; (2) had a record of such an impairment; or (3) was regarded by the USPS as having such an impairment. *See Timm v. Wright State Univ.*, 375 F.3d 418, 423 (6th Cir. 2004).

5

Vanderlee has failed to present evidence that at the time of the adverse decision (April 2004) she had an impairment that substantially limited her in some major life activity. Rather, at that time, the USPS had recently received a letter from Vanderlee's own treating physician stating that she was "under no work restrictions," as well as a contemporaneous letter from Vanderlee herself stating that she had fully recovered from her injuries. Furthermore, Vanderlee testified at deposition that she has not had any physical limitations since her physician's March 26, 2004 letter.

Vanderlee later suggested that the 2005 termination was the adverse employment for which she sought Rehab Act recovery but, as the district court explained, this was not consistent with her complaint, which alleged disability discrimination only in the form of the USPS's refusal to return her to the rural carrier position. Moreover, Vanderlee's EEOC complaint alleged only that the USPS committed disability discrimination by refusing to return her to the rural carrier position. The EEOC complaint did not allege disability discrimination by termination, so she has failed to exhaust administrative remedies for any such claim. *See Burden v. USPS*, 345 F. App'x 972 (6th Cir. 2009).

On appeal to this court, Vanderlee has changed course: she now appears to disclaim her car accident injuries and instead claims that her disability is due to her diabetes or her adjustment disorder/depression, or some combination of the two. But, again, she has not exhausted her administrative remedies on this particular claim. Furthermore, she has pointed to no evidence in the record that would support a finding that either of these conditions substantially limits her in some major life activity. Nor can she overcome her own evidence to the contrary. Neither condition, under these facts, would satisfy a Rehabilitation Act claim. *See Timm*, 375 F.3d at 423.

Vanderlee also contends, now on appeal, that the adverse employment action at issue was that she was unable to work because of the harassment by the clerks. But, again, she has not exhausted her administrative remedies on this claim. Furthermore, it is undisputed that any harassment from the other clerks was due to union issues, not her disability. In order to satisfy a Rehabilitation Act claim, Vanderlee must show that she suffered an adverse employment action solely by reason of her disability. *See Lee*, 636 F.3d at 249. Because this alleged adverse employment action is unrelated to her disability, it would not satisfy a Rehabilitation Act claim.

### III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.